FILED

2019 NOV 21 P 4: 04

UNSEALED PER ORDER OF COURT

CLERK US DISTRICT COURT

11/22/19
dlg

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

January 2019 Grand Jury

| UNITED STATES OF AMERICA, | Case No. **19 CR 4768 GPC** |
|---|---|
| Plaintiff, | **I N D I C T M E N T** |
| v. | Title 18, U.S.C., Secs. 922(a)(1)(A), 923(a) and 924(a)(1)(D) – Engaging in the Business of Dealing in Firearms Without a License; Title 18, U.S.C., Sec. 922(a)(6) and 924(a)(2) – False Statement in the Acquisition of a Firearm; Title 18, U.S.C., Sec. 924(a)(1)(A) – False Statement in the Acquisition of a Firearm; Title 18, U.S.C., Sec. 922(b)(2) and 924(a)(1)(D) – Conducting Firearms Transaction in Violation of State Law; Title 26, U.S.C., Secs. 5861(d) and 5871 – Possession of Unregistered Firearm; Title 18, U.S.C., Sec. 1001(a)(2) – False Statement; Title 18, U.S.C., Sec. 1512(b)(3) – Attempted Obstruction of Justice; Title 21, U.S.C., Sec. 841(a)(1) – Possession of Marijuana with Intent to Distribute; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 21, U.S.C., Sec. 843(b) – Use of a Communications Facility to Further a Drug Crime; Title 18, U.S.C., Sec. 924(d), Title 26, U.S.C., Sec. 5872, Title 21, U.S.C., Sec. 853, and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |
| MORAD MARCO GARMO (1), LEO JOSEPH HAMEL (2), GIOVANNI VINCENZO TILOTTA (3), aka "Gio Tilotta", FRED MAGANA (4), WAIEL YOUSIF ANTON (5), aka "Will Anton", | |
| Defendants. | |

1    The grand jury charges:

2                        INTRODUCTORY ALLEGATIONS

3        1.    From October 16, 1992 to September 20, 2019, defendant MORAD

4    MARCO GARMO was a Deputy Sheriff at the San Diego County Sheriff's

5    Department ("SDCSD").   From January 8, 2016 to February 13, 2019, GARMO

6    was the Captain in charge of the Rancho San Diego Station, a substation

7    of SDCSD covering approximately 150 square miles in San Diego County

8    including Spring Valley, Lemon Grove, Imperial Beach, and unincorporated

9    areas of the County.   At no time did GARMO possess the Federal Firearms

10   License ("FFL") required to be lawfully engaged in the business of

11   dealing in firearms.

12       2.    Defendant LEO JOSEPH HAMEL owned and operated a series of

13   jewelry stores and related businesses, commonly known as Leo Hamel Fine

14   Jewelers.   HAMEL held multiple FFLs since January 1992, including one

15   related to his business, Leo Hamel Fine Jewelers.

16       3.    From at least September 9, 2015 to the present, defendant

17   GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta", held one or more FFLs and

18   owned and operated a firearms dealer commonly known as "Honey Badger

19   Firearms."

20       4.    From approximately October 19, 2001 to the present, defendant

21   FRED MAGANA was a Deputy Sheriff at SDCSD.

22       5.    Defendant WAIEL YOUSIF ANTON, aka "Will Anton", held himself

23   out as a consultant in various matters concerning state and local

24   government, including as a consultant assisting persons applying to

25   SDCSD for concealed weapons permits, commonly known as permits to carry

26   a concealed weapon ("CCW").

27

28

2

Relevant Firearms Laws

6.   California Penal Code Section 32000 prohibited the manufacturing, importing, offering for sale, selling, gifting, or loan of any handgun that was not on the roster of handguns determined to be "not unsafe" within the meaning of California Penal Code Section 32015. More specifically:

a.   Pursuant to California Penal Code Section 32015, the California State Department of Justice ("CalDOJ") maintained a roster of handguns that could lawfully be sold in the State of California.   The roster was a listing of handguns by model, model number, and model name that had been tested by a California certified testing laboratory and determined "not to be unsafe."   The handguns listed on this roster were the only handguns that could be sold in the State of California, subject to certain exceptions.

b.   Any handgun not listed on the roster was referred to as "unsafe," "non-roster," or "off roster."

c.   An "off roster" handgun could only be sold to, or purchased by, certain exempted parties listed in California Penal Code Section 32000.   California Penal Code Section 32000(b)(4) permitted sworn members of police departments and other law enforcement or military agencies to purchase "off roster" handguns for use in the performance of their official duties.

d.   The California Penal Code did not prohibit an exempted person, such as a sworn member of a police department, from re-selling an "off roster" handgun to a non-exempted buyer who was not otherwise prohibited by the applicable laws and regulations.

7.   California Penal Code Section 27535 provided that "no person shall make an application to purchase more than one handgun within any

3

30-day period," except for certain parties identified in the statute, including law enforcement agencies and paid peace officers.   Pursuant to the exception set forth in California Penal Code Section 27535(b)(5), peace officers could purchase or apply to purchase more than one handgun within a 30-day period.

8.   California Penal Code Section 26815 generally provided that no firearm could be delivered within ten days of the application to purchase (the "ten-day waiting period").  The ten-day waiting period did not apply to the sale, delivery, or transfer of firearms made to a full-time, paid police officer whose employer had authorized the officer to carry firearms while in the performance of the officer's duties.

9.   California Penal Code Section 32310 generally prohibited the possession of a large-capacity magazine, which was defined by California Penal Code Section 16740 as a magazine capable of accepting more than ten rounds of ammunition.  California Penal Code Section 32405 provided an exception to this prohibition for law enforcement officers.

10.   The United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") required all federally-licensed firearms dealers to document firearms sales and purchases to non-licensees on an ATF Form 4473, a form that was completed by the federal firearms licensee ("FFL") dealer and the firearm purchaser.   The documentation process included the following requirements:

a.   At the time the purchaser submitted an application to purchase a firearm, the purchaser was required to certify on ATF Form 4473 that he or she was the "actual transferee/buyer" of the firearm. ATF Form 4473 advised that: "You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person."

4

1    b. At the time the purchaser took possession of the firearm,
2 which generally was at the conclusion of the 10-day waiting period, the
3 purchaser was required to re-certify on the ATF Form 4473 that all of
4 the assertions previously made on the ATF Form 4473 during the initial
5 application were true, correct, and complete.

6       Unlawful Firearms Acquisitions & Transfers

7  11. From approximately March 2013 until February 13, 2019,
8 Defendant MORAD MARCO GARMO engaged in the business of dealing in
9 firearms without a license. Specifically, GARMO acquired approximately
10 146 firearms in transactions conducted through FFLs and reported to
11 California's Automated Firearms System ("AFS").  During the same time
12 period, GARMO transferred approximately 93 firearms to other people in
13 transactions conducted through FFLs and reported to AFS.  As set out in
14 further detail below, GARMO also transferred additional firearms to
15 others (including Defendant LEO JOSEPH HAMEL), sometimes in exchange for
16 cash, without conducting lawful transfers through FFLs.

17  12. GARMO engaged in the business of dealing in firearms by
18 devoting time, attention, and labor to dealing in firearms as a regular
19 course of trade or business with the principal objective of livelihood
20 and profit through the repetitive purchase and resale of firearms.  One
21 aspect of GARMO's livelihood and profit in dealing in firearms was to
22 make money by reselling firearms at favorable prices or exchanging them
23 for valuable services.  Another aspect was for GARMO to build good will
24 with future potential donors or benefactors who could advance his career
25 or support anticipated political campaigns, including GARMO's expressed
26 intention to run for San Diego County Sheriff, by obtaining firearms for
27 them that they could not directly obtain for themselves.

28

13. GARMO was reprimanded by the San Diego County District Attorney's Office ("SDCDAO") on or about February 23, 2017 for excessive handgun sales in violation of California law. Shortly after this reprimand, GARMO separately received a written warning distributed to law enforcement agencies by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, which warned law enforcement officers against purchasing "off roster" firearms and reselling those firearms to non-law enforcement officers for a profit. GARMO forwarded the warning memorandum by email to HAMEL.

14. As part of his unlicensed dealing in firearms, GARMO often acquired and disposed of the same model of firearm repeatedly. For example, over a period of just over three (3) years, GARMO acquired no fewer than five (5) Glock 43 off roster handguns and transferred all of them to other people.

15. As part of his unlicensed dealing in firearms, GARMO repeatedly purchased firearms, including especially "off roster" handguns, with the intention to resell them to specific individuals: transactions commonly known as "straw purchases." For example, between December 2014 and May 2018, GARMO falsely certified that he was the actual buyer or transferee of at least nine (9) firearms that he had already agreed to sell to other specific individuals at the time he made those false certifications, as further alleged below.

16. As another part of his unlicensed dealing in firearms, GARMO also supplied certain firearms purchasers with high-capacity magazines that they were not permitted to possess under California law. Similarly, GARMO supplied his firearms purchasers with ammunition, including SDCSD Department-issued ammunition that he was not authorized to distribute.

6

1    17.   In order to conceal his extensive and unlawful engagement in
2  the business of dealing in firearms, GARMO typically conducted the
3  private party transfer of a given firearm at a different FFL from the
4  dealer where he had previously acquired the firearm.

5    18.   In order to further conceal his extensive and unlawful
6  engagement in the business of dealing in firearms, GARMO informally
7  transferred firearms to other individuals (primarily HAMEL) on long-
8  term "loan," including in exchange for money.  In reality, the "loans"
9  were a sham, and the transactions were firearm sales in all but name.
10  GARMO and HAMEL also attempted to fraudulently legitimize their sham
11  "loans" with written records created to protect themselves in case the
12  "loans" were questioned.  For example, HAMEL emailed GARMO on March 16,
13  2018: "I'll stop by Saturday and drop off the money and pick up the
14  guns.  If you want to hand write a letter stating I am borrowing them
15  that would be good."  Because GARMO and HAMEL both understood that the
16  "loan" would be indefinite, HAMEL added that GARMO's letter should
17  include a "Serial number [but] no date though."

18    19.   In order to conceal and facilitate the straw purchase of off
19  roster handguns for his close associates, GARMO relied in part on
20  Defendant GIOVANNI VINCENZO TILOTTA and TILOTTA's FFL, Honey Badger
21  Firearms.   TILOTTA repeatedly facilitated GARMO's straw purchase of
22  firearms for HAMEL by knowingly permitting those transactions to be
23  conducted at his FFL, accepting and submitting falsified records as if
24  GARMO were the firearms' true purchaser.

25    20.   TILOTTA also aided and abetted GARMO's unlicensed firearms
26  dealing by preparing early firearms transfer records based on personal
27  information for GARMO and his associates transmitted by GARMO to TILOTTA.
28  By preparing firearms transfer records ahead of time, without requiring

7

the parties to the transaction to appear in person at his FFL, and instead permitting GARMO and selected associates to backdate those records after the fact, TILOTTA enabled GARMO and others to circumvent the ten-day waiting period prescribed by California law for firearms transfers.

21. Another part of GARMO and HAMEL's arrangement with TILOTTA involved creating falsified records to make it appear that GARMO was purchasing firearms on his own behalf, instead of straw purchasing them for HAMEL. On June 27, 2016, for example, HAMEL emailed GARMO, "Gio [TILOTTA] asks that we do ordered guns [t]his way. You email him first that you want a Sig Legion and a Walther P99cAS. He will then reply ok. You then go in to order. You can do right away." On July 7, 2016, GARMO in fact purchased a Sig Sauer Legion P226 9mm handgun bearing serial number 47A141276 from TILOTTA's FFL, falsely certifying that he was the actual buyer/transferee of the firearm. Although the firearm was never legally transferred from GARMO to HAMEL, it was found in HAMEL's possession on February 13, 2019.

22. The same day that GARMO acquired the Sig Sauer Legion P226 handgun for HAMEL, he acquired two Colt 1911 handguns for J.K., an associate whom GARMO sought to develop as a supporter for his planned campaign for Sheriff of San Diego County. GARMO had placed his order for the two Colts with TILOTTA by email on July 3, 2016, and when TILOTTA confirmed the order on July 4, 2016, GARMO forwarded that email to J.K. the same day under the message "FYI." In November 2016, when GARMO later informed J.K. that GARMO was under investigation by CalDOJ as discussed above, J.K. texted him "Are you in trouble? Are we? . . . I never said anything to anyone." GARMO reassured J.K. that the matter "should blow over."

23.   TILOTTA also facilitated GARMO's unlicensed dealing by conducting firearms transactions at locations convenient to GARMO and his associates, such as GARMO's inner office at the SDCSD Rancho San Diego substation, despite the fact that such transactions violated California law.   Specifically, on October 28, 2016, GARMO and TILOTTA sold a variety of firearms to San Diego attorney V.B. inside GARMO's office at the SDCSD Rancho San Diego substation, including (1) a Glock 27 .40 caliber pistol bearing serial number RLK240 for $1,200; (2) a Daniel Defense AR-15 style rifle; and (3) a Smith & Wesson Shield handgun. In connection with the sale, GARMO offered to supply V.B. with SDCSD Department-issued ammunition for his new Glock.   At GARMO's direction, TILOTTA facilitated the Daniel Defense and Shield transactions by preparing advance paperwork for V.B.'s firearms transactions, which V.B. backdated at the October 28, 2016 sale as if the records had first been executed on October 8, 2016.

24.   After GARMO was reprimanded by the SDCDAO in February 2017 for his excessive purchase and sale of off roster handguns, he altered his unlicensed firearms dealing activities but did not cease them.   For example, instead of uniformly making straw purchases himself and then directly transferring the firearms to their intended recipients, GARMO procured another SDCSD officer to conduct such a transaction: Defendant FRED MAGANA.  Specifically, on March 20, 2017, GARMO sent a text message to TILOTTA's associate, J.R.D., that read "Hey bro, can you order a Walther PPQ m2 and a Glock 42, also get a price on a FN9mm compact w SS slide. The above guns are for Lt. Fred Magana, let me know when the orders are placed, thanks brother."   In fact, GARMO knew that the firearms were intended for HAMEL.  On April 7, 2017, GARMO texted HAMEL "Btw confirming Fred [MAGANA] is buying a walther ppq and pps no glocks."

HAMEL replied "No glocks" and added "PPQ m2 or classic. Either. PPS m2 as well.  Thanks."  GARMO then texted J.R.D.: "update for Fred; only Walther PPQ m2 & PPS m2 no glock no FN."  On April 24, 2017, MAGANA signed paperwork for a Walther PPQ M1 and a Walther PPQ M2 at Honey Badger Firearms reflecting that he was the actual buyer of those handguns.  The Walther handguns were both transferred to HAMEL on paper on September 15, 2017 at Honey Badger Firearms.

25.  To facilitate his unlicensed firearm dealing, and to deflect attention from it, GARMO also used others, including other Sheriff's Deputies, to promote firearms that he was offering for sale.  For example, on September 7, 2018, MAGANA texted GARMO, "Give me a list of the stuff you want to sell and I'll pimp it out to some homies and [] keep your name out of it until they are ready to pull the trigger." Likewise, GARMO asked another Sheriff's Deputy, D.L., to advertise firearms GARMO was offering for sale to his father's private security company.

26.  As a collateral benefit of purchasing firearms from him, GARMO encouraged his customers to apply for permits to carry a concealed weapon (CCW) from the San Diego County Sheriff's Department.  For example, GARMO suggested to an ATF undercover agent that the agent apply for a CCW.  GARMO added that he could write a letter of recommendation for the undercover agent, whom he had met roughly three weeks earlier while selling him two off roster handguns.  When the undercover agent asked if GARMO could help the agent avoid the months-long wait for an initial appointment for a CCW, GARMO suggested that his friend (Defendant WAIEL YOUSIF ANTON) could help the agent get an earlier appointment in exchange for a cash payment.

27. ANTON aided and abetted GARMO's unlicensed firearms dealing by helping GARMO's firearms customers apply for CCW permits in exchange for cash payments. Specifically, ANTON would use connections at the Sheriff's Licensing Department to secure appointments months earlier than those available to the general public, charging between $1,000 and $2,000 for this service. As part of this scheme, ANTON unlawfully paid a clerk at SDCSD's civilian licensing staff $100 in cash in exchange for making early CCW appointments for his "consulting" clients. When negotiating with the ATF undercover agent referred to him by GARMO, ANTON told the agent that he would pay a referral fee of $100 per customer for any other CCW applicants the agent sent to ANTON. In turn, one of the $100 bills which the agent paid ANTON for securing an early CCW appointment was found in GARMO's wallet eight (8) days later, representing a kickback to GARMO of the "consulting" fee earned by ANTON from the CCW applicant GARMO referred to him.

28. No fewer than twenty-nine (29) firearms registered to GARMO in AFS were not located at GARMO's residence or his office on February 13, 2019.

29. On February 13, 2019, HAMEL possessed hundreds of firearms, including eleven (11) firearms registered to GARMO.

30. On February 13, 2019, following a search of his residence by federal agents, ANTON telephoned the ATF undercover agent and repeatedly urged him not to tell federal investigators about the $1,000 that he had paid ANTON. ANTON repeated this instruction in a separate telephone call on February 14, 2019.

## Marijuana Dispensary Activity

31. As the Captain of SDCSD's Rancho San Diego Substation, GARMO was responsible for policing unlicensed marijuana dispensaries operating

1  in violation of state and local law, including a rash of unlicensed
2  dispensaries operating in and around Spring Valley, California.

3      32.  One such unlicensed and illegal marijuana dispensary, known
4  as "Campo Greens," was located at 10002 Campo Road in Spring Valley,
5  California.  Campo Greens was owned and operated by Individual 1, who
6  partnered with Individual 2 (its property owner and landlord) and
7  Individual 3 (GARMO's cousin).  On or about March 1, 2018, GARMO sold a
8  Sig Sauer P320 .45 caliber pistol bearing serial number 58A070887 to
9  Individual 3.

10     33.  On July 10, 2018, GARMO received an email notification of an
11 impending search of Campo Greens scheduled for the following morning.
12 Within one minute of replying to that email, GARMO placed a telephone
13 call to Individual 4, his cousin and Individual 3's brother.  During the
14 telephone call between GARMO and Individual 4, GARMO warned Individual
15 4 about the imminent search of Campo Greens.  Following Individual 4's
16 conversation with GARMO, Individual 4 immediately placed a call to
17 Individual 3 to warn him of the impending search.

18     34.  On July 10, 2018, prior to GARMO's notification, Campo Greens
19 was open for business and operating normally.  Several hours after
20 GARMO's notification and telephone call to Individual 3, Campo Greens
21 staff emptied its shelves and removed its inventory and cash so that it
22 would not be seized by law enforcement in the expected search.

23     35.  The following morning, on July 11, 2018, Campo Greens was
24 closed for business.  The morning of July 11, 2018, GARMO received an
25 email notification that the search of Campo Greens had been canceled.
26 Within one minute of replying to that email, GARMO again called
27 Individual 4 to pass along the information that there was no further

28

1 danger of an immediate search. Campo Greens opened for business later
2 that day.

3    36.  On August 7, 2018, Campo Greens was posted with a nuisance
4 abatement letter by San Diego County Code Enforcement. The letter stated
5 that Campo Greens' operation was in violation of local law, and directed
6 the business to cease operations within ten (10) days.

7    37.  The same day, Individual 3 texted a photograph of the abatement
8 letter to GARMO. Less than half an hour later after that text message
9 was sent, GARMO texted Individual 5, a San Diego County employee whose
10 job included communications concerning unlicensed marijuana
11 dispensaries. Individual 5 asked Garmo "who[se] abatement letter"?
12 GARMO replied "Chaldeans I know can we push it back?" Individual 5
13 replied "Yes you can."

## Count 1
### Engaging In The Business Of
### Dealing In Firearms Without A License
### Aiding & Abetting
### [18 U.S.C. §§ 922(a)(1)(A) & 2]

17    38.  The allegations set forth in paragraphs 1 through 37 above are
18 realleged and incorporated by reference as if fully set forth herein.

19    39.  Beginning no later than March 2013 and continuing until at
20 least February 13, 2019, within the Southern District of California, and
21 elsewhere, defendant MORAD MARCO GARMO, not being licensed as an
22 importer, manufacturer, or dealer of firearms, willfully engaged in the
23 business of dealing in firearms, aided and abetted by defendants LEO
24 JOSEPH HAMEL, GIOVANNI VINCENT TILOTTA, aka "Gio Tilotta," FRED MAGANA,
25 and WAIEL YOUSIF ANTON, aka "Will Anton".
26 All in violation of Title 18, United States Code, Sections 922(a)(1)(A),
27 923(a), 924(a)(1)(D), and 2.

28

**Count 2**
**False Statement in the Acquisition of a Firearm**
**[18 U.S.C. § 922(a)(6) & 924(a)(2)]**

40.   The allegations set forth in paragraphs 1 through 39 above are realleged and incorporated by reference as if fully set forth herein.

41.   On or about December 17, 2014, within the Southern District of California, defendant MORAD MARCO GARMO, in connection with the acquisition of a firearm from a licensed dealer, namely, the acquisition of a Zastava M92 7.62 x 39mm pistol, bearing serial number M92PV044341, from the Deputy Sheriffs Association in Poway, California, knowingly made a false and fictitious written statement, intended to and likely to deceive such dealer with respect to a fact material to the lawfulness of the sale of such firearm under Title 18, United States Code, Chapter 44, in that defendant GARMO executed and submitted to the Deputy Sheriffs Association a United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record, stating that defendant GARMO was the actual buyer of the firearm, when, in truth and in fact, as defendant GARMO then well knew, he was not the actual buyer of the firearm, in that he was acquiring the firearm on behalf of another person.

All in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2).

**Count 3**
**False Statement in the Acquisition of a Firearm**
**[18 U.S.C. § 922(a)(6) & 924(a)(2)]**

42.   The allegations set forth in paragraphs 1 through 41 above are realleged and incorporated by reference as if fully set forth herein.

43.   On or about April 22, 2015, within the Southern District of California, defendants MORAD MARCO GARMO and LEO JOSEPH HAMEL, in connection with the acquisition of a firearm from a licensed dealer,

1  namely, the acquisition of a Sig Sauer P320 9mm pistol, bearing serial
2  number 58B017746, from the Deputy Sheriffs Association in Poway,
3  California, knowingly made and caused to be made a false and fictitious
4  written statement, intended to and likely to deceive such dealer with
5  respect to a fact material to the lawfulness of the sale of such firearm
6  under Title 18, United States Code, Chapter 44, in that defendants GARMO
7  and HAMEL executed and submitted, and caused to be executed and
8  submitted, to the Deputy Sheriffs Association a United States Department
9  of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form
10 4473 Firearms Transaction Record, stating that defendant GARMO was the
11 actual buyer of the firearm, when, in truth and in fact, as defendant
12 GARMO then well knew, he was not the actual buyer of the firearm, in
13 that he was acquiring the firearm on behalf of HAMEL.

14 All in violation of Title 18, United States Code, Sections 922(a)(6)
15 and 924(a)(2).

16                          **Count 4**
17          **False Statement in the Acquisition of a Firearm**
                **[18 U.S.C. § 922(a)(6) & 924(a)(2)]**

18     44.   The allegations set forth in paragraphs 1 through 43 above are
19 realleged and incorporated by reference as if fully set forth herein.

20     45.   On or about October 12, 2015, within the Southern District of
21 California, defendant MORAD MARCO GARMO, in connection with the
22 acquisition of a firearm from a licensed dealer, namely, the acquisition
23 of a Glock 43 9mm pistol, bearing serial number ZWZ585, from the Deputy
24 Sheriffs Association in Poway, California, knowingly made a false and
25 fictitious written statement, intended to and likely to deceive such
26 dealer with respect to a fact material to the lawfulness of the sale of
27 such firearm under Title 18, United States Code, Chapter 44, in that
28 defendant GARMO executed and submitted to the Deputy Sheriffs

1  Association a United States Department of Justice, Bureau of Alcohol,
2  Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record,
3  stating that defendant GARMO was the actual buyer of the firearm, when,
4  in truth and in fact, as defendant GARMO then well knew, he was not the
5  actual buyer of the firearm, in that he was acquiring the firearm on
6  behalf of another person.
7  All in violation of Title 18, United States Code, Sections 922(a)(6)
8  and 924(a)(2).

9  ### Count 5
### False Statement in the Acquisition of a Firearm
10  ### [18 U.S.C. § 922(a)(6) & 924(a)(2)]

11      46.  The allegations set forth in paragraphs 1 through 45 above are
12  realleged and incorporated by reference as if fully set forth herein.

13      47.  On or about May 29, 2018, within the Southern District of
14  California, defendant MORAD MARCO GARMO, in connection with the
15  acquisition of a firearm from a licensed dealer, namely, the acquisition
16  of a Century Arms RAS47 7.62mm rifle, bearing serial number RAS47058200,
17  at AO Sword Firearms in El Cajon, California, knowingly made a false and
18  fictitious written statement, intended to and likely to deceive such
19  dealer with respect to a fact material to the lawfulness of the sale of
20  such firearm under Title 18, United States Code, Chapter 44, in that
21  defendant GARMO executed and submitted to AO Sword Firearms a United
22  States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and
23  Explosives Form 4473 Firearms Transaction Record, stating that defendant
24  GARMO was the actual buyer of the firearm, when, in truth and in fact,
25  as defendant GARMO then well knew, he was not the actual buyer of the
26  firearm, in that he was acquiring the firearm on behalf of ANTON.
27  All in violation of Title 18, United States Code, Sections 922(a)(6)
28  and 924(a)(2).

1

**Count 6**
**False Statement in the Acquisition of a Firearm**
**[18 U.S.C. § 924(a)(1)(A)]**

48.  The allegations set forth in paragraphs 1 through 47 above are realleged and incorporated by reference as if fully set forth herein.

49.  On or about October 21, 2015, within the Southern District of California, defendants MORAD MARCO GARMO and LEO JOSEPH HAMEL, knowingly made and caused to be made a false statement and representation to Honey Badger Firearms in San Diego, California, a person licensed under the provisions of Title 18, United States Code, Chapter 44, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Honey Badger Firearms, in that defendants GARMO and HAMEL executed and submitted, and caused to be executed and submitted, to Honey Badger Firearms a United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record, stating that defendant GARMO was the actual buyer of a Sig Sauer P320 Compact 9mm pistol, bearing serial number 58B024632, when, in truth and in fact, as defendant GARMO then well knew, he was not the actual buyer of the firearm, in that he was acquiring the firearm on behalf of HAMEL.

All in violation of Title 18, United States Code, Section 924(a)(1)(A).

**Count 7**
**False Statement in the Acquisition of a Firearm**
**[18 U.S.C. § 924(a)(1)(A)]**

50.  The allegations set forth in paragraphs 1 through 49 above are realleged and incorporated by reference as if fully set forth herein.

51.  On or about July 7, 2016, within the Southern District of California, defendants MORAD MARCO GARMO and LEO JOSEPH HAMEL knowingly made and caused to be made a false statement and representation to Honey Badger Firearms in San Diego, California, a person licensed under the

17

1  provisions of Title 18, United States Code, Chapter 44, with respect to
2  information required by the provisions of Chapter 44 of Title 18, United
3  States Code, to be kept in the records of defendant TILOTTA and Honey
4  Badger Firearms, in that defendants GARMO and HAMEL executed and
5  submitted, and caused to be executed and submitted, to TILOTTA and Honey
6  Badger Firearms a United States Department of Justice, Bureau of Alcohol,
7  Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record,
8  stating that defendant GARMO was the actual buyer of a Sig Sauer P226
9  Legion 9mm pistol, bearing serial number 47A141276, when, in truth and
10 in fact, as defendant GARMO then well knew, he was not the actual buyer
11 of the firearm, in that he was acquiring the firearm on behalf of HAMEL.
12 All in violation of Title 18, United States Code, Section 924(a)(1)(A).

**Count 8**
**False Statement in the Acquisition of a Firearm**
**[18 U.S.C. § 924(a)(1)(A)]**

15 52. The allegations set forth in paragraphs 1 through 51 above are
16 realleged and incorporated by reference as if fully set forth herein.

17 53. On or about July 7, 2016, within the Southern District of
18 California, defendant MORAD MARCO GARMO, knowingly made a false
19 statement and representation to Honey Badger Firearms in San Diego,
20 California, a person licensed under the provisions of Title 18, United
21 States Code, Chapter 44, with respect to information required by the
22 provisions of Chapter 44 of Title 18, United States Code, to be kept in
23 the records of Honey Badger Firearms, in that defendant GARMO executed
24 and submitted to Honey Badger Firearms a United States Department of
25 Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473
26 Firearms Transaction Record, stating that defendant GARMO was the actual
27 buyer of a Colt 1911 .45 caliber pistol, bearing serial number 2931866,
28 when, in truth and in fact, as defendant GARMO then well knew, he was

18

1  not the actual buyer of the firearm, in that he was acquiring the firearm
2  on behalf of another person.

3  All in violation of Title 18, United States Code, Section 924(a)(1)(A).

## Count 9
### False Statement in the Acquisition of a Firearm
### [18 U.S.C. § 924(a)(1)(A)]

54.  The allegations set forth in paragraphs 1 through 53 above are realleged and incorporated by reference as if fully set forth herein.

55.  On or about July 7, 2016, within the Southern District of California, defendant MORAD MARCO GARMO, knowingly made a false statement and representation to Honey Badger Firearms in San Diego, California, a person licensed under the provisions of Title 18, United States Code, Chapter 44, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Honey Badger Firearms, in that defendant GARMO executed and submitted to Honey Badger Firearms a United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record, stating that defendant GARMO was the actual buyer of a Colt 1911 9mm pistol, bearing serial number NN03641, when, in truth and in fact, as defendant GARMO then well knew, he was not the actual buyer of the firearm, in that he was acquiring the firearm on behalf of another person.

All in violation of Title 18, United States Code, Section 924(a)(1)(A).

## Count 10
### False Statement in the Acquisition of a Firearm
### [18 U.S.C. § 924(a)(1)(A)]

56.  The allegations set forth in paragraphs 1 through 55 above are realleged and incorporated by reference as if fully set forth herein.

57.  On or about April 24, 2017, within the Southern District of California, defendants MORAD MARCO GARMO, LEO JOSEPH HAMEL, and

1  FRED MAGANA, knowingly made and caused to be made a false statement and
2  representation to Honey Badger Firearms in San Diego, California, a
3  person licensed under the provisions of Title 18, United States Code,
4  Chapter 44, with respect to information required by the provisions of
5  Chapter 44 of Title 18, United States Code, to be kept in the records
6  of Honey Badger Firearms, in that defendants MAGANA, GARMO and HAMEL
7  executed and submitted, and caused to be executed and submitted, to
8  Honey Badger Firearms a United States Department of Justice, Bureau of
9  Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction
10 Record, stating that defendant MAGANA was the actual buyer of a Walther
11 PPS M2 9mm pistol, bearing serial number AR5980, when, in truth and in
12 fact, as defendant MAGANA then well knew, he was not the actual buyer
13 of the firearm, in that he was acquiring the firearm on behalf of HAMEL.
14 All in violation of Title 18, United States Code, Section 924(a)(1)(A).

### Count 11
### False Statement in the Acquisition of a Firearm
### [18 U.S.C. § 924(a)(1)(A)]

17     58.   The allegations set forth in paragraphs 1 through 57 above are
18 realleged and incorporated by reference as if fully set forth herein.

19     59.   On or about April 24, 2017, within the Southern District of
20 California, defendants MORAD MARCO GARMO, LEO JOSEPH HAMEL, and FRED
21 MAGANA, knowingly made and caused to be made a false statement and
22 representation to Honey Badger Firearms in San Diego, California, a
23 person licensed under the provisions of Title 18, United States Code,
24 Chapter 44, with respect to information required by the provisions of
25 Chapter 44 of Title 18, United States Code, to be kept in the records
26 of Honey Badger Firearms, in that defendants GARMO, HAMEL, and MAGANA,
27 executed and submitted, and caused to be executed and submitted, to
28 Honey Badger Firearms a United States Department of Justice, Bureau of

Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record, stating that defendant MAGANA was the actual buyer of a Walther PPQ M2 9mm pistol, bearing serial number FCH4067, when, in truth and in fact, as defendant MAGANA then well knew, he was not the actual buyer of the firearm, in that he was acquiring the firearm on behalf of HAMEL. All in violation of Title 18, United States Code, Section 924(a)(1)(A).

## Count 12
### False Statement in the Acquisition of a Firearm
### [18 U.S.C. § 924(a)(1)(A)]

60.  The allegations set forth in paragraphs 1 through 59 above are realleged and incorporated by reference as if fully set forth herein.

61.  On or about May 31, 2018, within the Southern District of California, defendant MORAD MARCO GARMO, knowingly made a false statement and representation to Honey Badger Firearms in San Diego, California, a person licensed under the provisions of Title 18, United States Code, Chapter 44, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Honey Badger Firearms, in that defendant GARMO executed and submitted to Honey Badger Firearms a United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record, stating that defendant GARMO was the actual buyer of a Sig Sauer P365 9mm pistol, bearing serial number 66A047292, when, in truth and in fact, as defendant GARMO then well knew, he was not the actual buyer of the firearm, in that he was acquiring the firearm on behalf of another person.

All in violation of Title 18, United States Code, Section 924(a)(1)(A).

//

//

//

## Count 13
### Conducting Firearms Transaction in Violation of State Law
### [18 U.S.C. §§ 922(b)(2) & 924(a)(1)(D)]

62.  The allegations set forth in paragraphs 1 through 61 above are realleged and incorporated by reference as if fully set forth herein.

63.  On or about October 28, 2016, within the Southern District of California, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta", a person licensed under the provisions of Title 18, United States Code, Chapter 44, knowingly did sell, deliver and transfer three firearms, that is, a Daniel Defense AR-15 style 5.56mm rifle bearing serial number DDM4107377, a Smith & Wesson Shield 9mm handgun bearing serial number HNH6175, and a Glock 27 .40 caliber pistol bearing serial number RLK240, to V.B., at the Rancho San Diego Substation of the San Diego County Sheriff's Department, a location prohibited by California Penal Code Section 26805(d).

All in violation of Title 18, United States Code, Sections 922(b)(2) and 924(a)(1)(D).

## Count 14
### Possession of Unregistered Firearm
### [18 U.S.C. §§ 5861(d) & 5871]

64.  The allegations set forth in paragraphs 1 through 63 above are realleged and incorporated by reference as if fully set forth herein.

65.  On or about February 13, 2019, within the Southern District of California, defendant LEO JOSEPH HAMEL knowingly possessed a firearm, as defined by Title 26, United States Code, Sections 5845(a)(5) and 5845(e), that was a pistol having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, namely, a Thomas Bland & Sons 20-gauge double-barreled, single-shot pistol, with smoothbore barrels approximately 9 5/8 inches in length, bearing serial number 14846, which had not been registered to HAMEL in the National

22

Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

All in violation of Title 26, United States Code, Sections 5861(d) and 5871.

### Count 15
### Possession of Unregistered Firearm
### [18 U.S.C. §§ 5861(d) & 5871]

66. The allegations set forth in paragraphs 1 through 65 above are realleged and incorporated by reference as if fully set forth herein.

67. On or about February 13, 2019, within the Southern District of California, defendant LEO JOSEPH HAMEL knowingly possessed a firearm, as defined by Title 26, United States Code, Sections 5845(a)(5) and 5845(e), that was a pistol having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, namely, a Harrington & Richardson Arms Co. 28-gauge single-shot "Handy-Gun" pistol, with a smoothbore barrel approximately 12 1/4 inches in length, bearing serial number 19932, which had not been registered to HAMEL in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

All in violation of Title 26, United States Code, Sections 5861(d) and 5871.

### Count 16
### False Statement
### [18 U.S.C. § 1001(a)(2)]

68. The allegations set forth in paragraphs 1 through 67 above are realleged and incorporated by reference as if fully set forth herein.

69. On or about February 13, 2019, within the Southern District of California, defendant MORAD MARCO GARMO did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive

23

1 branch of the Government of the United States by stating and representing
2 to agents from the Federal Bureau of Investigation and the Bureau of
3 Alcohol, Tobacco, Firearms and Explosives that GARMO had never engaged
4 in straw purchases of firearms.  The statements and representations were
5 false because, as defendant GARMO then and there well knew, he had
6 conducted numerous straw purchases of firearms for HAMEL, J.K., and
7 others.

8 All in violation of Title 18, United States Code, Section 1001(a)(2).

9 **Count 17**
**False Statement**
10 **[18 U.S.C. § 1001(a)(2)]**

11    70.   The allegations set forth in paragraphs 1 through 69 above are
12 realleged and incorporated by reference as if fully set forth herein.

13    71.   On or about February 14, 2019, within the Southern District
14 of California, defendant MORAD MARCO GARMO did knowingly and willfully
15 make a materially false, fictitious and fraudulent statement and
16 representation in a matter within the jurisdiction of the executive
17 branch of the Government of the United States by stating and representing
18 to an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives
19 that the last time he had received money from WAIEL YOUSIF ANTON,
20 aka "Will Anton", was several months earlier in exchange for a Ruger LCP
21 firearm.    The statements and representations were false because, as
22 defendant GARMO then and there well knew, he had received the money from
23 ANTON on or after February 5, 2019.

24 All in violation of Title 18, United States Code, Section 1001(a)(2).
25 //
26 //
27 //
28 //

1

2

### Count 18
### Attempted Obstruction of Justice
### [18 U.S.C. § 1512(b)(3)]

3   72.   The allegations set forth in paragraphs 1 through 71 above are

4 realleged and incorporated by reference as if fully set forth herein.

5   73.   On or about February 13, 2019, in the Southern District of

6 California, defendant WAIEL YOUSIF ANTON, aka "Will" ANTON, did

7 knowingly attempt to corruptly persuade and to bribe an undercover agent

8 of the Bureau of Alcohol, Tobacco, Firearms and Explosives by repeatedly

9 directing the undercover agent not to tell federal investigators that

10 he had paid ANTON $1,000 for his supposed "consulting" services and to

11 instead falsely tell investigators that ANTON was helping the undercover

12 agent because they were friends, and by promising to refund the

13 undercover agent's money and continue to provide free services, all with

14 the intent to hinder, delay and prevent the communication to agents of

15 the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco,

16 Firearms and Explosives of information relating to the commission and

17 possible commission of a federal offense, specifically aiding and

18 abetting the unlicensed dealing of firearms, in violation of Title 18,

19 United States Code, Section 922(a)(1)(A), and federal program bribery,

20 in violation of Title 18, United States Code, Section 666.

21 All in violation of Title 18, United States Code, Section 1512(b)(3).

22

### Count 19
### Aiding & Abetting the Possession of Marijuana
### With the Intent to Distribute
### [21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2]

23

24

25   74.   The allegations set forth in paragraphs 1 through 73 above are

26 realleged and incorporated by reference as if fully set forth herein.

27   75.   On or about July 10, 2018 and on or about August 7, 2018,

28 within the Southern District of California, defendant MORAD MARCO GARMO

1  aided and abetted the distribution of marijuana and the possession with
2  intent to distribute marijuana, a Schedule I Controlled Substance.
3  All in violation of Title 21, United States Code, Section 841(a)(1), and
4  Title 18, United States Code, Section 2.

**Counts 20-22**
**Use of a Communications Facility to**
**Further a Drug Crime**
**[21 U.S.C. § 843(b)]**

76.  The allegations set forth in paragraphs 1 through 75 above are
realleged and incorporated by reference as if fully set forth herein.

77.  On or about the dates and times listed below, within the
Southern District of California, defendant MORAD MARCO GARMO did
knowingly and intentionally use any communication facility, to wit, a
Samsung Galaxy S7 cellular telephone then bearing telephone number XXX-
XXX-0719, in facilitating the commission of any act or acts constituting
a felony under Title 21, United States Code, Section 841(a)(1), that is,
the distribution and possession with the intent to distribute marijuana,
a Schedule I Controlled Substance.

| Count | Date & Time | Use of Communications Facility |
|-------|-------------|--------------------------------|
| 20 | July 10, 2018 5:02 p.m. PT | Telephone call to Individual 4 following notification to GARMO of Campo Greens search |
| 21 | July 11, 2018 10:48 a.m. PT | Telephone call to Individual 4 following notification to GARMO that search of Campo Greens had been canceled |
| 22 | August 7, 2018 4:13 p.m. PT | Text message to Individual 5 regarding abatement notice for Campo Greens, asking "can we push it back?" |

All in violation of Title 21, United States Code, Section 843(b).

**Count 23**
**False Statement**
**[18 U.S.C. § 1001(a)(2)]**

78. The allegations set forth in paragraphs 1 through 77 above are realleged and incorporated by reference as if fully set forth herein.

79. On or about February 13, 2019, within the Southern District of California, defendant MORAD MARCO GARMO did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in matter within the jurisdiction of the executive branch of the Government of the United States by stating and representing to agents from the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco, Firearms and Explosives that "Hell no," he had never told a marijuana dispensary that Sheriff's deputies were coming to serve a search warrant, because he would never put his deputies in harm's way. The statements and representations were false because, as defendant GARMO then and there well knew, he had provided advance warning of an impending warrant search of a dispensary, including to Individual 4 on July 10, 2018.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## FORFEITURE ALLEGATIONS

80. The allegations set forth above are realleged and incorporated herein for the purpose of alleging forfeiture to the United States of America under Title 18, United States Code, Section 924(d), Title 26, United States Code, Section 5872, and Title 28, United States Code, Section 2461(c).

81. Upon conviction of the one or more of the offenses set forth in Counts 1 through 10 above, and pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), defendants MORAD MARCO GARMO, LEO JOSEPH HAMEL, GIOVANNI VINCENT

TILOTTA, aka "Gio Tilotta," FRED MAGANA, and WAIEL YOUSIF ANTON, aka "Will Anton", shall forfeit to the United States all rights, title and interest in all firearms and ammunition involved in the offenses. The property to be forfeited includes, but is not limited to:

      a. 64 firearms seized from GARMO on February 13, 2019; and

      b. 5 firearms seized from ANTON on February 13, 2019.

82. Upon conviction of one or more of the offenses set forth in Counts 14 and 15, and pursuant to Title 26, United States Code, Section 5872 and Title 28, United States Code, Section 2461(c), defendant LEO JOSEPH HAMEL shall forfeit to the United States all firearms involved in such offenses.

83. Upon conviction of one or more of the felony offenses set forth in Counts 19 through 22, which are subject to imprisonment for more than one year, and pursuant to Title 21, United States Code, Section 853, defendant MORAD MARCO GARMO shall forfeit to the United States all his rights, title and interest in any and all property constituting, or derived from, any proceeds defendant MORAD MARCO GARMO obtained, directly or indirectly, as the result of the offenses, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations.

84. If any of the above-described forfeitable property, as a result of any act or omission of the defendants—

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

1          e.    has been commingled with other property which cannot be

2                subdivided without difficulty;

3    it is the intent of the United States, pursuant to Title 21, United

4    States Code, Section 853(p) and Title 28, United States Code,

5    Section 2461(c), to seek forfeiture of any other property of the

6    defendants up to the value of the property listed above as being subject

7    to forfeiture.

8    All pursuant to Title 18, United States Code, Section 924(d), Title 26,

9    United States Code, Section 5872, Title 21, United States Code,

10   Section 853, and Title 28, United States Code, Section 2461(c).

11        DATED:   November 21, 2019.

12                                          A TRUE BILL:

13

14                                          _____
                                            Foreperson
15

16   PETER J. MAZZA
     Attorney for the United States
17   Acting Under Authority
     Conferred by 28 U.S.C. § 515
18

19   By: _____
         NICHOLAS W. PILCHAK
20       Assistant U.S. Attorney

21

22   By: _____
         ANDREW R. HADEN
23       Assistant U.S. Attorney

24

25

26

27

28